A. Y. OATES, *et ux.*, v. NEW YORK LIFE INSURANCE COMPANY.

178 So. 570.

En Banc.

Opinion Filed December 22, 1937.

Rehearing Denied February 15, 1938.

852

*Ira C. Hopper,* for Appellants;

*Bradford G. Williams, Raymond D. Knight, Henry P. Adair, John M. McNatt* and *Knight, Adair, Cooper & Osborne,* for Appellee.

ELLIS, C. J.—The only question presented by this appeal is whether, in the circumstances established by the record, a married woman, the owner by entireties with her husband

of certain real property which constitutes the homestead of the husband, is estopped from contesting the validity of a mortgage which was placed upon the homestead by the husband to secure a loan to him upon the ground that she did not appear before the notary public separately and apart from her husband, or at all, and before such officer acknowledge separately from her husband that she executed the instrument freely and voluntarily and without any compulsion, constraint, apprehension or fear of or from her said husband.

The circumstances in which the mortgage involved in this case, and which is sought to be foreclosed by an assignee of the original mortgagee, was executed are as follows: on the first of June, 1926, Mr. and Mrs. A. Y. Oates were the owners by the entireties of a certain parcel of land with improvements thereon located in Casa Bella, a subdivision of Lakeland in the County of Polk in this State. Mr. Oates having obtained a promise of a loan from the mortgagee, Telfair Stockton & Company, prepared a mortgage to secure the payment of the note executed by him and his wife for the payment of the loan, which was in the sum of $15,-000.00, and taking the mortgage to his home procured the signature thereto of his wife.

The signatures of Mr. and Mrs. Oates appear to have been made in the presence of two witnesses: A. F. Pickard and Leone C. McGowan. The latter named person is the notary public before whom the certificate of acknowledgment of the execution of the mortgage appears to have been made. Mrs. Oates, at the request of her husband, signed the mortgage at her home and did not appear in person before Leone C. McGowan, the notary public, who was an employee in the office of Mr. Pickard, which office was located elsewhere in the City of Lakeland.

Mrs. Oates had on many occasions before signed deeds or mortgages at the request of her husband without appearing before a notary public to acknowledge the execution of the instrument in accordance with the requirements of the statute. She did not know that the mortgage in question in this case described the homestead, nor does it appear that there was any conversation between her and her husband relating to the subject matter of the transaction.

There is no evidence that Mrs. Oates acted under duress in signing the mortgage nor is there any evidence that Mr. Oates did not receive the money for which the mortgage was given. Mr. Oates took the mortgage and delivered it to the mortgagee, Telfair Stockton & Company, the mortgage appearing upon its face to have been duly executed and acknowledged.

Mr. Oates at the time of applying for the loan from Telfair Stockton & Company and at the time of the execution of the mortgage and delivery of the same, and afterwards, was the head of a family residing in this State and the property covered by the mortgage was, as stated, the homestead of Mr. Oates, although it was owned by himself and his wife by the entireties.

On the third of August, 1934, in a final decree based upon the pleadings and the evidence in the case, the court definitely found the fact to be that Mrs. Oates did not acknowledge the execution of the mortgage before the notary public or any notary public, "therefore, that the said certificate was and is a legal fraud and a nullity, and therefore, this Court finds that the said mortgage was not and is not a properly and validly executed mortgage and is unenforceable, and cannot be foreclosed against the property" therein described.

It is also a fact that when Mrs. Oates signed the mortgage there was a blank unexecuted certificate of acknowl-

edgment appended thereto immediately below and upon the same sheet; that it was this certificate which was subsequently executed by the notary public although Mrs. Oates did not appear before her and make the requisite acknowledgment of the execution of the mortgage; that the mortgage was filed for record in the office of the clerk of Polk County, and duly recorded. In June, 1926, the New York Life Insurance Company purchased the note and mortgage from the mortgagee at par value. Neither at the time of the delivery of the mortgage to Telfair Stockton & Company, or at the time of delivery by it to the New York Life Insurance Company was either party advised that there was any defect whatsoever in the notarial certificate of execution of the mortgage by the wife, Mrs. Oates.

In June, 1930, the assignee of the Oates note and mortgage exhibited its second amended bill of complaint in the Circuit Court of Polk County against A. Y. Oates and his wife, Almena Oates, for the foreclosure of the mortgage alleging that the same was in default and unpaid and praying the usual relief.

In August, 1931, the Chancellor made a decree finding the equities with the complainant and decreeing a foreclosure of the mortgage. From that decree and from an order denying the defendants motion to vacate it, for leave to take further testimony and for a rehearing, the defendants Oates took an appeal.

The decree of the Chancellor was reversed on the authority of the cases of Menendez v. Rodriguez, 106 Fla. 214, 143 South. Rep. 223, and McEwen v. Schenck, 108 Fla. 119, 146 South. Rep. 839. See Oates v. New York Life Ins. Co., 113 Fla. 678, 152 South. Rep. 671.

The Menendez case, *supra,* was a suit for partition and involved an estate by the entireties. The Court held that where a homestead was held by a man and his wife by the

entireties, upon the death of the husband the entire fee passed to the wife to the exclusion of the husband's children by a former marriage. Mr. Justice WHITFIELD, in a concurring opinion, elucidated fully that proposition of law.

In the McEwen case, *supra*, the defense interposed was that Mrs. McEwen did not appear before the notary public and did not make the acknowledgment as certified to by the notary public. The Chancellor, in his decree, stated that there was substantial evidence to support that defense, but did not decide the weight and sufficiency of the evidence, and entered a decree for the complainant. The decree was reversed because the Chancellor failed to consider the weight and sufficiency of the evidence upon that averment of the plea. The court definitely held that where a married woman, in the attempted alienation of the homestead, appeared before the notary public and made the acknowledgment, that the certificate of the officer authorized to take such acknowledgment is, in the absence of fraud or duress in the matter of the acknowledgment by the married woman, conclusive of the fact stated in the officer's certificate, but it was also definitely held that where the married woman did not appear before the officer who made the certificate of acknowledgment, then he was without "jurisdiction, or power to take the acknowledgment of the married woman, or to make the statutory certificate with reference thereto." In the concurring opinion by Mr. Chief Justice DAVIS, the thought was suggested that in such case fraud was shown on the part of the officer purporting to make the certificate, and therefore the presumed verity of the certificate was impeached.

The instant case, being reversed upon the first appeal, was considered by the Chancellor upon the pleadings and the evidence taken, and in August, 1934, he decreed the

equities to be with the defendants, Oates, and dismissed the bill on the merits.

In that opinion the Chancellor found from the evidence in the case that Mrs. Oates did not appear before the notary public and therefore made no acknowledgment of the execution of the mortgage as the statute requires, and consequently the officer who made the certificate was without "jurisdiction, authority or power to take the acknowledgment" of Mrs. Oates. From that decree and an order entered later denying the plaintiff's petition for rehearing the complainant took an appeal.

By an evenly divided Court, the decree was affirmed. A rehearing was granted and the following order was entered:

"Let judgment be entered on rehearing vacating and reversing the final decree without prejudice, and without costs to either side, with directions that the whole cause be remanded to the Circuit Court for further consideration and disposition, after a full rehearing and reconsideration of all of the issues of law and fact in the light of the opinion of this Court hereinbefore approved by a majority of the Court as the applicable law of this case to be considered and applied to its disposition." See New York Life Ins. Co. v. Oates, 122 Fla. 540, 166 South. Rep. 269.

It will be noticed from a reading of the opinions that there was no opinion by the Court in the case approved by a majority of the Court. On the contrary the Court was evenly divided so that there could have been no other order than that of an affirmance. See State, ex rel. Hampton, v. McClung, 47 Fla. 224, 37 South. Rep. 51.

On motion for additional directions subsequently filed in this Court the Court made the following order:

"No mandate has been given to the chancellor to decide the facts of this controversy in the court below in any particular way. Our last decision in effect does nothing more

than grant a rehearing before the chancellor of the whole controversy. While in deciding the case on such rehearing, the chancellor is bound to follow and apply the applicable rules of law as last set forth in the opinion of Mr. Chief Justice WHITFIELD, which was agreed to by a majority of the Supreme Court, the decision of this case itself still remains with the chancellor, in so far as the weight and legal effect of the evidence in the case may be concerned when it is again heard by him on the rehearing we have in effect ordered in the court below.

"It is not within the province of the Supreme Court to give any additional directions to the chancellor in the case, other than such as have already been set forth in our previous opinions and in our mandate, therefore the motion for same is denied." New York Life Ins. Co. v. Oates, *supra.*

It will be observed from that order that the Court merely stated that the Chancellor "is bound to follow and apply the applicable rules of law as last set forth in the opinion of Mr. Chief Justice WHITFIELD, which was agreed to by a majority of the Supreme Court, the decision of this case itself still remains with the chancellor, in so far as the weight and legal effect of the evidence in the case may be concerned when it is again heard by him." See New York Life Ins. Co. v. Oates, *supra.*

The rules of law as set forth in the opinion of Mr. Chief Justice WHITFIELD in that case related only to the matter of an estoppel of a married woman from denying that she acknowledged the execution of a mortgage or deed in the manner required by the statute; that is to say, from denying that she appeared before a notary public or other officer authorized to take the acknowledgment of deeds and made due acknowledgment of the execution thereof.

The report of that case does show that on a rehearing a majority of the Court approved the language of Mr. Chief Justice WHITFIELD in relation to the doctrine of an estoppel as the same was invoked against Mrs. Oates. What the learned Justice said was, in substance, as follows: that the decree should be reversed because the Chancellor did not consider the question of estoppel against Mrs. Oates which issue "was made and not adjudicated by the court, though such issue of estoppel was referred to in grounds of the petition for rehearing which the chancellor by order denied," and on the matter of estoppel he said that a married woman may be estopped by her conduct concerning the execution of acknowledgment of instruments affecting real estate in which she is interested, and that this suit does not relate to title but to the recovery of money loaned upon the faith of a mortgage instrument which appears on its face to be duly executed; that the complainant assignee was not at fault; and the defendants have received a loan which if paid or otherwise settled will satisfy the demand for repayment of the loan.

It is incorrect to say that the defendants received a loan because there is no evidence whatsoever in the record that Mrs. Oates participated in the reception of that loan or the benefits derived from it. Neither is there any evidence in the record that either by her conduct or by her words did she induce Telfair Stockton & Company to make the loan to her husband upon the faith of the security represented by the mortgage involved in this controversy, nor that she participated in any manner in the transaction by which the loan was secured. From the evidence, as disclosed by the record and which the Chancellor found to be true, she merely, at the request of her husband, signed the mortgage without knowing for what purpose it was executed or upon what property it purported to constitute a lien. She was not even

aware, as the Chancellor found, that the property described was the homestead which was held by her and her husband by the entireties.

In the opinion on rehearing, in which Mr. Circuit Judge John B. Johnson sat in the place of the writer, who was absent on account of illness, it was merely determined that the principles of law relating to an estoppel, as announced by Mr. Justice WHITFIELD in his opinion, should be applied in the case, by the Chancellor in a reconsideration of all the questions of law and fact in light of his opinion. There was no instruction direct or implied in that opinion to the Chancellor to hold that in the light of the circumstances in that case he should find that there existed an estoppel against Mrs. Oates.

So the judgment of this Court was entered reversing the decree upon the appeal of the New York Life Insurance Company, with directions that the whole cause be remanded to the Circuit Court for further consideration and disposition after a full rehearing. The Circuit Court, pursuant to that mandate, on the 15th of July, 1936, upon a consideration of the entire cause after a full rehearing, rendered its decree holding that the equities were with the complainant, and ordered a foreclosure of the mortgage and reserved jurisdiction to make such further orders as the court might deem sufficient in the premises.

In a preliminary statement to the decree entered, the Chancellor stated that in his opinion the effect of the first decree rendered by the trial court was to hold:

"That a mortgage on a homestead signed by the wife, where she did not appear before the Notary Public as shown in the certificate of acknowledgment appended to said mortgage, is utterly void and that such married woman could not be estopped from claiming the benefit of said failure to appear before the Notary Public and thereby defeat the

mortgage. That opinion went even further and held such estoppel would not lie even where the mortgage was transferred to the third party, and I think this undoubtedly was the law as laid down in a long line of decisions by the Supreme Court of Florida up to and including the first opinion in this case.

"Therefore, said cause came back to this Court with the law in my judgment settled by said opinion and preceding opinions to the effect that estoppel would not lie against the married woman in this case and could not be made to lie. Accordingly, entertaining this view of the law, this Court made a finding of facts and entered a decree for defendants, decreeing the mortgage in this case to be invalid."

It is further stated in the decree that the court had found the fact to be that the married woman, Mrs. Oates, did not appear before the notary public who made the certificate of acknowledgment, and did not acknowledge the execution of the mortgage according to the requirements of the law. It was also stated that the Chancellor had found the fact to be that Mr. Oates, after procuring the signature of his wife to the mortgage, carried it before a notary public and in the absence of Mrs. Oates caused the certificate of acknowledgment to be made out and signed by the notary public; thereupon he carried the mortgage to the mortgagee, Telfair Stockton & Company, and received therefor the sum of money evidenced by the promissory note, the payment of which the pretended mortgage purported to secure.

The court further stated that he had definitely concluded that on the facts, as presented by the record in the cause, Mrs. Oates was not estopped from denying that she appeared before the notary public, and therefore the court was of the opinion that no other decree, in view of the pleadings and the evidence in the case, was proper to be rendered than that the mortgage was invalid.

Further in the preliminary statement to the decree, the Chancellor said that he construed the opinion written by Mr. Chief Justice WHITFIELD to differ from the law as the chancellor understood it to have theretofore been laid down by the Supreme Court of Florida in other cases and in this cause. The Chancellor further stated that he construed the opinion of Mr. Chief Justice WHITFIELD to mean:

"That in the case of a mortgage on the home place signed by the wife and husband where she does not in fact appear before any Notary Public or make any acknowledgment of the execution thereof before any Notary Public, *but the husband takes the said mortgage so signed by his wife and has an acknowledgment apparently good on its face appended thereto, and takes same to the mortgagee therein named, and secures money for a loan on said property, that the wife under such facts is estopped from claiming; that she did not appear before the Notary Public and that the mortgage is therefore invalid."*

That interpretation of the opinion of Mr. Chief Justice WHITFIELD was erroneous. What was said was that where:

"In a suit to foreclose such a mortgage, it is admitted or duly proven that the mortgage was signed by both the husband and the wife, but it is averred as a defense that the wife did not appear before or acknowledge the execution of the mortgage before the officer whose certificate states that she did so appear and acknowledge the execution of the mortgage, then, in the absence of estoppel, such averment as a defense may be proven by convincing evidence. Hutchinson v. Stone, 79 Fla. 157, 84 South. 151; Randall v. Twitchell, 98 Fla. 559, 124 So. 21; Morris v. Shepard, 104 Fla. 121, 139 So. 189; Smith v. Hogan, 117 Fla. 82, 157 So. 183; Suttle v. Wold, 117 Fla. 802, 158 So. 447; Smith v. McEwen, decided at this term.

"Where it is admitted or duly proven that the wife did appear before the officer concerning the execution of the mortgage by her, she will be estopped to assert that she did not make the statutory acknowledgment of the execution of the mortgage as may be properly stated in the officer's certificate. But if it be clearly shown by convincing testimony of disinterested witnesses that there was fraud or duress in procuring the execution of the mortgage or in taking acknowledgment of the execution by the wife, in which fraud or duress the holders of the mortgage or their privies participated, or of which fraud or duress they had or could reasonably have had knowledge or notice, the mortgage holders will be estopped to enforce the mortgage. See Shear v. Robinson, 18 Fla. 379; Bank of Jennings v. Jennings, 71 Fla. 145, 71 So. 31; Smith v. Commercial Bank, 77 Fla. 163, 81 So. 154; Rausch v. Equit. L. Assn. Soc., 77 Fla. 846, 82 So. 295; Green v. First Nat'l Bank, 85 Fla. 51, 95 So. 231; Herald v. Hardin, 95 Fla. 889, 116 So. 863; Morris v. Shepard, 104 Fla. 121, 139 So. 189.

"In their answer the husband and wife admit that the wife signed the mortgage instrument; but the answer avers that the wife did not appear before the officer and did not acknowledge the instrument in the presence of the officer. On such averment it may be shown by positive, clear, convincing and legally sufficient evidence, as by sufficient competent testimony and corroborating circumstances, that the wife did not appear before the officer who certified that she did appear before him and acknowledge the execution of the mortgage; and such showing may invalidate the mortgage, unless in estoppel it may be and is shown that by reason of the conduct of the wife in knowingly signing the mortgage instrument with the blank certificate of acknowledgment appended thereto and designed to be executed under the law, or by reason of other conduct of the wife con-

cerning the transaction, her husband or his agent was enabled to have the appending certificate of the wife's acknowledgment that she executed the mortgage, authenticated by an officer, thereby making the mortgage valid on its face, upon the faith of which a loan was made.

"It is claimed that such conduct and its consequences are shown, for which the husband and wife should be estopped to assert as a defense to the suit that the wife did not appear before or acknowledge before the officer the execution of the mortgage by her. If such estoppel is adjudicated, the official certificate will stand to sustain the mortgage which on its face is duly executed and acknowledged as required by the Constitution and laws of the State." New York Life Ins. Co. v. Oates, *supra*.

It appears from that language that the thought in the mind of the learned Chief Justice writing the opinion was, first, whether the wife did appear before the notary public, the certificate of such officer being quasi-judicial in character was *prima facie* evidence of the regularity of the acknowledgment; second, that a defense interposed to the foreclosure of such a mortgage that the wife did not in fact appear before the notary public, and such defense established by clear and convincing evidence, it was a complete defense to the foreclosure proceedings in a case where the husband and wife held the property intended to be mortgaged by the entireties or that it constituted the homestead; third, that such defense, however, could be overcome in a case where the wife by her conduct either in word or deed showed that it was her purpose to authorize the certificate of the notary public to be filled out in her absence, to the end that the loan might be procured, or that she was aware that the blank certificate of acknowledgment was intended thereafter to be filled out in her absence, or by reason of other conduct of the wife concerning the trans-

action her husband or his agent was enabled to have the appended certificate of the wife's acknowledgment that she executed the mortagage authenticated by an officer, thereby making the mortgage valid on its face upon the faith of which a loan was made.

The Chief Justice also stated that if such estoppel were shown the official certificate would stand to sustain the mortgage.

The Court in that opinion expressly stated that it did not determine whether the evidence justified the findings of the Chancellor that the wife did not appear before the officer and did not acknowledge before any officer that she executed the mortgage, but the decree should be reversed because the question of estoppel, as against the wife as described in the opinion, was presented and not adjudicated.

The evidence fully sustains the finding of the Chancellor that the wife did not appear before the notary public making the certificate of acknowledgment; second, the defense that she did not appear before the notary public and did not make an acknowledgment of the execution of the mortgage, and that the property was held by her and her husband by the entireties and constituted their homestead, was established in the opinion of the Chancellor by clear and convincing evidence; third, there is no evidence in this record that the elements of an estoppel, which would operate against Mrs. Oates from denying that she appeared before the notary public and acknowledged the instrument as the law requires, existed, and the Chancellor in his opinion seems to so find the fact to be, because the whole tenor of his opinion, gathered from the words of it, is that he regarded the opinion of Mr. Chief Justice WHITFIELD to be an instruction to the Chancellor to find that such an estoppel existed against Mrs. Oates.

We reaffirm the view, as expressed by the Chancellor in all of his opinions in this case, that it is essential to the validity of a mortgage upon real estate held by the husband and wife by the entireties or upon the homestead that the wife shall appear separately and apart from her husband before the notary public and acknowledge before such officer that she executed the instrument freely, voluntarily and without compulsion, constraint, apprehension or fear of or from her husband, and that the certificate of the notary public that the wife did so appear could be overcome by convincing evidence, which was done in this case.

The citations made by the Court in the opinions rendered in this case heretofore upon this point need not be here repeated.

Upon an examination of the record and evidence in this cause, we find that there is a total lack of any authority for the assertion that Mrs. Oates, by her words or conduct, authorized her husband or his agent to procure the making of a certificate of acknowledgment by her as the statute requires, nor is there any evidence that she participated in the transaction by which the loan was obtained, or that by any word or act of hers did she induce the mortgagee to believe that it was her purpose to acknowledge before a notary public, as the law requires, the execution of the instrument. On the other hand, the evidence is abundant to sustain the finding that without any knowledge of the description of the property which was being encumbered, save what was contained in the instrument itself, which she may be held to have notice, and without any knowledge of the details of the transaction between her husband and Telfair Stockton & Company further than that he intended to obtain a loan from it, she signed the note and the mortgage at his request and deemed her duty to have ended with her signature to the mortgage.

There is not in the record any evidence which suggests that by her words or her conduct she induced the making of the loan, or that she personally participated in it further than to comply with her husband's request to sign the instrument, which she did without question.

On the other hand, some duty rests upon the other parties to such a transaction, at least prudence requires of them, in the matter of making a loan upon real estate which is held by the entireties by husband and wife, and has the additional peculiarities which the character of a homestead casts upon it, to satisfy themselves that the requirements of the law have been complied with in the formal execution of the mortgage. This the mortgagee failed to do, but saw fit to rely upon the face of the instrument as to its regularity and the *prima facie* quality of verity of the notary's certificate notwithstanding the law charges it with a knowledge that it is essential to the validity of such certificate that the wife shall personally appear before the officer and make the acknowledgment which the law requires.

A mortgage does not possess the negotiable character of a promissory note and neither the payee, mortgagee or assignee of such mortgage may accept the same as a courier without luggage.

The knowledge that Mrs. Oates did not in this case appear before the notary public was open to the mortgagee by the slightest effort on its part by having a representative present when the certificate was made, or questioning the husband or wife as to whether the latter appeared before the notary public.

Concerning the question of the morality or righteousness of the defense interposed in this case by the Oateses, the Court, of course, should not and does not express any opinion.

Article XI, Section 1, of the Constitution of Florida, expressly provides that the separate property of a married woman, real or personal, shall not be subject to the payment of her husband's debts without her consent given by some instrument in writing according to the law respecting conveyances by married women.

Article X, Section 1, of the Constitution, provides that the homestead shall not be alienable without the joint consent of husband and wife, when that relation exists, and Section 4 of the same Article provides that the alienation of the homestead may be made by husband and wife, when that relation exists.

It has been held by this Court that the married man may alienate his homestead by deed or mortgage executed by himself and wife. Norton v. Baya, 88 Fla. 1, 102 South. Rep. 361; Bank of Jennings v. Jennings, 71 Fla. 145, 71 South. Rep. 31; McEwen v. Shenck, *supra;* Hams v. Marshall, 43 F. (2d) 703.

This Court in the case of Hutchinson v. Stone, 79 Fla. 157, 84 South. Rep. 151, said: "A 'mortage duly executed * * * by husband and wife' sufficient to create a lien upon homestead real estate of the husband, as between the mortgagors and mortgagees must be duly executed by the husband and wife and the execution by the wife duly acknowledged by her, since under the statute due acknowledgment by the wife of the execution of the deed or mortgage by her is essential to the validity of any conveyance or relinquishment of an interest in real estate by the wife even as between the parties to the instrument." Text page: 79 Fla. 166. See also Murphy v. Duncan, 111 Fla. 548, 149 South. Rep. 594.

Section 5676 C. G. L. 1927 prescribes the method at law by which a married woman may effectually pass her estate or right in real property to a third person, and that method.

requires her to acknowledge before some officer authorized to take acknowledgments of deeds, separate and apart from her husband, that she executed the same freely and voluntarily and without compulsion, constraint, apprehension or fear of or ·from her husband, and the officer's certificate shall set forth all the foregoing requirements.

It was held in the case of Thompson v. Kyle, 39 Fla. 582; 23 South. Rep. 12, that a mortgage properly executed by husband and wife conveying the wife's separate statutory real property as security for the husband's debts is valid in this State.

Thus it appears that the law of this State requires the formalities set forth herein to be observed in order that a married woman may alienate her separate estate by either deed or mortgage or that the homestead may be alienated in such manner.

It is not within the province of this Court to question the wisdom of such constitutional and statutory requirements, but on the other hand it is the duty of the Court to determine the question of the validity of an alienation of the homestead or the separate statutory property of ·the wife by the provisions existing in the law, both constitutional and statutory, that exist. It is not within the province of the Court to bring to the aid of the mortgagee or grantee in a deed, in his effort to enforce the same in the courts, the negligent failure of the grantee or mortgagee to pursue the prudent course of ascertaining for himself that the requirements of the law have been followed and observed which are necessary to the alienation of the homestead or the separate statutory property of the married woman. However much the exigencies of the situation, due to a large volume of business, may be used by way of an apologetic explanation of why the prudent course was not followed, it cannot be used to the extent of establishing an estoppel against a

married woman from denying the validity of the certificate. Such estoppel can exist, if at all, by a clear, affirmative showing that the married woman by such words or conduct placed herself in the inequitable position of inducing or consenting to the loan, or impliedly authorized her husband to cause the certificate of acknowledgment to be executed and then availed herself of the defense that she did not legally execute the instrument.

Such circumstances did not exist in this case and the record does not disclose any foundation for invoking the doctrine of estoppel against the defendants. The decree of the chancellor is reversed with directions to adjudicate the question of estoppel as the same is invoked against Mrs. Oates and in so doing determine whether the evidence discloses in this case that by her words or deed she authorized her husband to cause the certificate of acknowledgment to be made out in her absence to the end that a loan, as set forth in the instrument, might be procured from the mortgagee.

Reversed.

WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.